### NICHOLS *against* JOHNSON.

An alteration of a written instrument, by a stranger, though material, will not render such instrument inoperative.

An alteration of a written instrument, which does not vary its meaning, by a party claiming under it, or by virtue of it, will not destroy it.

A note or memorandum of sale, within the statute of frauds and perjuries,

must state, expressly or by reference, the subject of sale, the terms and the parties, with such certainty, as to furnish evidence of a complete agreement.

Where the subject of sale was described in the memorandum as " *B's* right in *C's* estate," it was held, that this description was sufficiently certain.

But where the memorandum was a book, on the cover of which was written: " *A's* memorandum of *B's* property received by assignment;" and on a leaf of the book, under the caption, "Sales at auction, 6th *March*, 1826," was this entry: " *B's* right in *C's* estate, sold to *D*, $60 ;" in an action brought by *A*, the auctioneer, against *D*, for the purchase money, it was held, that the memorandum was fatally defective, because it did not shew, with the requisite certainty, that *A* was the vendor of the estate sold.

*Fairfield,*
*June, 1834.*

Nichols
*v.*
Johnson.

THIS was an action of *assumpsit*, stating, that on the 1st of *February*, 1825, *Donald Baldwin* died, leaving real estate of the value of 1000 dollars, being about 50 acres of land in *Newtown;* that *Philo Baldwin*, as one of the heirs of *Donald Baldwin*, was entitled to one fifth part of such estate, after payment of the debts of the deceased and the expenses of settling his estate ; that on the 19th of *November*, 1825, the right of *Philo Baldwin* in such estate was legally assigned to and became vested in the plaintiff; that on the 6th of *March*, 1826, at *Newtown*, the plaintiff offered said right for sale, at public auction, to the highest bidder, and it was struck off to the defendant, for the sum of 60 dollars, he being the highest bidder; that the defendant, then and there, in consideration that the plaintiff would sell and convey said right to the defendant, on his request, undertook and promised the plaintiff to buy the same of him, and to pay him said sum of 60 dollars therefor, when thereto requested ; that afterwards, on the 6th of *March*, 1826, the plaintiff tendered to the defendant a conveyance of said right, every way duly executed and sufficient to convey a legal title, and requested the defendant to receive the same ; yet the defendant then and there refused to receive the same, and also refused to pay said sum of 60 dollars. The defendant pleaded *Non assumpsit*.

The cause was tried at *Fairfield, December* term, 1833, before *Williams*, J.

It was admitted, that the estate, upon the sale of which the action was founded, was land of which *Donald Baldwin* died seised. To establish the plaintiff's title, he gave in evidence a deed of release from *Philo Baldwin*, in the usual form, duly executed. To prove the sale mentioned in the declaration, the

*Fuirfield,*
*June, 1834.*

Nichols
*v.*
Johnson.

plaintiff offered a memorandum or book, containing, as he claimed, the memorandum of the contract by the auctioneer. On the cover of this book were written these words : " *James Nichols'* Memorandum of *Philo Baldwin's* property received by assignment." On the 1st page of the book was written : " List of property charged on schedule as *P. Baldwin's.*" Then followed a list of notes and various articles of personal property, and an account of the sales thereof. On the 3d leaf of the book was written : " Property not on schedule personal." Then followed a list of various articles of personal property, and the sums for which they were sold. On the 4th leaf of the book was written : " Amount of land sold." Then followed an account of the sales of land. On the 5th leaf of the book was written : " Sales at auction, 6th *March,* 1826. Property not [previously] disposed of : 1 Note against *Geo. H. Thompson* for $229, sold to *Abijah Merit,* $40 ; 3 do.——*John L. Hubbell*—— $78,——*James Nichols,* 10 25." Then followed sundry similar items. At the close of the list was this entry : " *Philo Baldwin's* right in *Donald Baldwin's* estate, *John Johnson,* $60. Auct. 6th *March,* 1826."

The defendant contended, that this book was not a sufficient note or memorandum within the statute of frauds, and did not warrant the jury to find, that the sale alleged in the declaration, was made ; and prayed the court so to charge the jury.

The defendant claimed to have proved, that these words at the top of the 5th leaf, " Sales at auction, 6th *March,* 1826," were not on the leaf, at the time of the alleged sale, but were inserted afterwards ; and that if the jury should so find, they ought to give a verdict for the defendant. The book was the only written evidence of sale offered by the plaintiff. There was no claim that said insertion was made by the defendant.

On the points thus made, the court charged the jury as follows : " The statute of frauds requires that there should be a note or memorandum in writing, as to the sale of lands. That the auctioneer was the agent of the buyer for the purpose of making such entry, is not denied ; and the question is, whether the memorandum claimed to be proved, is sufficient. The momorandum ought to shew who was the vendor and who was the purchaser ; the thing sold, and the sum for which it was sold. As it was not admitted, that the entries in this book were all made by the auctioneer, the jury would find whether

the proof was such as was required, within the principles here laid down. And further, if they should find, that the words, 'Sales at auction, 6th of *March*, 1826,' were not made at the time, but afterwards, it would not destroy the efficacy of such memorandum." The jury returned a verdict for the plaintiff, for 86 dollars, 25 cents, damages; and the defendant moved for a new trial, for a misdirection.

*Sherman* and *Hawley*, in support of the motion, contended, 1. That the book given in evidence was not a sufficient memorandum within the statute of frauds. The general rule is, that the memorandum must be such, that from the face of it, and with no information *aliunde*, except by express reference, the scrivener can draw a conveyance of the property. 2 *Kent's Com.* 402. *Parkhurst* & al. v. *Van Cortlandt*, 1 *Johns. Ch. Rep.* 273. 280, 1. *Seagood* v. *Meale* & al. *Prec. Chan.* 560. *Boydell* v. *Drummond*, 11 *East*, 142. *Bailey & Bogert* v. *Ogden*, 3 *Johns. Rep.* 419. Of course, it must shew, with reasonable certainty, who are the parties, what is the subject matter of the sale, and what are the terms. This memorandum wants two of these essential requisites. First, it does not correctly describe the property sold. What is the property for the price of which the action is brought? One fifth part of *Donald Baldwin's* real estate, being 50 acres of land in *Newtown*, which fifth part belongs to the plaintiff, by virtue of a deed of release from *Philo Baldwin*. The memorandum does not designate the property by name or situation. Does it shew, that any property *belonging to the plaintiff*, was sold? The only description is: "*Philo Baldwin's* right [not the plaintiff's] in *Donald Baldwin's* estate." Secondly, it does not disclose the vendor. The name of the plaintiff appears but once, and that is on the cover of the book: "*James Nichol's* memorandum." *i. e.* a memorandum made or kept by *James Nichols*. Of what? Not of his own property, but of "*Philo Baldwin's property* received by assignment." Then again, on the 5th leaf, it appears to be "*Philo Baldwin's* right" that is sold. From the entries on the outside of this book and within it, taken together, it may, not unreasonably, be inferred, that the plaintiff had acted as the agent or auctioneer in the sale of *Philo Baldwin's* property; and this construction will satisfy every expression; but there is

*Fairfield,*
*June, 1834.*

Nichols
*v.*
Johnson.

nothing that shews, or implies, that *his own* property was sold, or in other words, that he was the *vendor.*

2. That the alteration of the writing, while it was in the plaintiff's hands, destroyed its efficacy as a note or memorandum of the defendant.

*Betts* and *Dutton,* contra, insisted, 1. That the memorandum was sufficient within the statute of frauds. It contains the name of the vendor, " *James Nichols,*" of the vendee, " *John Johnson,*" a correct designation of the property sold, " *Philo Baldwin's* right in *Donald Baldwin's* estate," which the plaintiff " received by assignment," and the price, " $60." A memorandum, *ex vi termini,* implies something short of a particular agreement. This is within the rule. A scrivener, with this book before him, would have no difficulty in drawing a conveyance of the property. 2 *Stark. Ev.* 603. n. 1. *Coles* v. *Trecothick,* 9 *Ves.* 234. *Huddleston* v. *Briscoe,* 11 *Ves.* 583. *Barry* v. *Coombe,* 1 *Pet.* 640. 650, 1. At any rate, this book contained written evidence of the agreement, proper to go to the jury. *Lloyd* v. *Maund,* 2 *Term Rep.* 760.

2. That the insertion of the words, " Sales at auction, 6th *March,* 1826," did not vitiate the memorandum. In the first place, they constitute no part of the memorandum. Secondly, they do not make any alteration in the meaning of the writing. *Sw. Ev.* 266. Thirdly, they are not material, being like the insertion of a particular place of payment, by the acceptor of a bill. *Trapp* v. *Spearman,* 3 *Esp. Rep.* 57. Fourthly, the cases of the alteration of *instruments,* are not applicable to a mere memorandum.

CHURCH, J. 1. Before considering the questions arising under the statute of frauds, it will be proper to consider a preliminary one, growing out of an alleged material alteration of the note or memorandum of sale, which is the foundation of this action. The plaintiff, in his declaration, charges the defendant as the highest bidder at auction for the estate therein described, and as such the purchaser of it. The memorandum or sale note was made by the auctioneer, agent as well of vendee as vendor. It was claimed, by the defendant, that the words " *sales at auction, 6th March,* 1826," standing as a caption over a list of property sold, in which is mentioned the

property in question, were inserted after the sale, and made no part of the original memorandum of sale ; and that, therefore, the memorandum, by reason of such alteration, was rendered void, and ineffectual to charge the defendant as purchaser of the estate. The opinion of the Judge at the trial was adverse to this claim of the defendant, and was unquestionably correct.

Whether the alteration in the memorandum, if material, was made by the plaintiff or a stranger, does not appear.

It is said in *Pigot's* case, 11 *Co. Rep.* 27. and also in *Markham* v. *Gonaston, Cro. Eliz.* 626. that " when any deed is altered in a point material, by the plaintiff himself, or by any stranger, without the privity of the obligee, be it by interlineation, addition, erasing, or by drawing a pen through a line, or through the midst of any material word, the deed thereby becomes void." This doctrine, not without good reason, has been supposed to have been derived from the ancient technical forms of pleading in cases of deeds, and from principles applicable to *proferts. Reed* v. *Brookman,* 3 *Term Rep.* 151. *Masters* v. *Miller,* 4 *Term Rep.* 321. But whatever may have been the origin of this principle, it has been much relaxed, if not entirely subverted, in later times, so far as it extends to the acts of strangers. As early as the reign of *Car.* 2. it was decided, that a deed was not made void, the seal of which had been torn off by a little boy. *Palm.* 413. Before the case of *Read* v. *Brookman,* 3 *Term Rep.* 151. it was uncertain how far a *profert* could be dispensed with, in a court of law ; and in that case, it was, for the first time, settled, that the loss or destruction of a deed would excuse a *profert ;* and that a resort to a court of equity, in such cases, was not necessary. More recently, it has been holden, that an alteration of a written instrument, by mistake, will not defeat it. *Chitty on Cont.* 298. *Raper* v. *Birkbeck* & al., 15 *East* 17. *Wilkinson* & al. v. *Johnson* & al. 3 *Barn. & Cres.* 428. (10 *Serg. & Lowb.* 140.) In the case of *Henfree* v. *Bromley,* 6 *East* 310. the court of *King's Bench* decided, that where an umpire, after the expiration of his power, had altered an award in a material part, such award was not thereby rendered void, but was good as before the alteration. In the case of *Jackson* d. *Malin* v. *Malin,* 15 *Johns. Rep.* 293. it is said, by *Platt,* J. " that a material alteration, though made by a stranger, without the privity of the party claiming under it, renders the deed void, is

*Fairfield,*
June, 1834.

Nichols
*v.*
Johnson.

a proposition to which I am not ready to assent." And in a still later case of *Rees* v. *Overbaugh,* 6 *Cowen* 746. this subject was discussed, by the supreme court of the state of *New-York,* and it was holden, that if a stranger tear a seal from a deed, it shall not destroy it. And no distinction exists, in this respect, between deeds and other written instruments. 4 *Term Rep.* 321. The reasons controuling the decisions in the cases referred to, seem entirely applicable to the present, and wholly inconsistent with the old doctrine of *Pigot's* case, in its application to the act of strangers to the deed. Indeed, it can hardly be conceived, if a deed or other instrument in writing is not rendered inoperative, by either a mistaken alteration, or its loss or even entire destruction, how it can be, by an unauthorized intermeddling of a stranger. And it is not to be presumed, in the present case, that the pretended alteration was made by the plaintiff; as there are no facts disclosed from which such presumption can arise.

2. But the addition made to this memorandum is an immaterial one : the meaning of the paper is not altered thereby. At the bottom of the leaf or page, on which the addition appears, is this original entry : "Auct. 6th *March,* 1826." The addition is nothing more than a repetition of this entry ; and, of course, immaterial. *Waugh* & ux. v. *Bussell,* 5 *Taun.* 707.

3. The principal question, in this case, arises upon the sufficiency of the memorandum of sale ; and whether it is good within the statute of frauds, to charge the defendant as the purchaser of the estate, for the price of which this action is brought. The general rule of law, on this subject, is not uncertain. The note or memorandum of sale, required by the statute, must state the contract with such certainty, that its essentials can be known from the memorandum itself, without the aid of parol proof, or by a reference contained therein to some other writing or thing certain ; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement. But it is not necessary that the consideration should appear ; nor is the form of the note, nor the place of signature, material. 1 *Kent's Com.* 402. 2 *Stark. Ev.* 603. *Roberts on Frauds* 110. *Parkhurst* v. *Van Cortlandt,* 1 *Johns. Ch. Rep.* 272. *Hinde* v. *Whitehouse,* 7 *East* 558. *Boydell* v. *Drummond,* 11 *East* 142. *Abeel* v. *Radcliff,* 13 *Johns. Rep.* 297. *Barry* v.

*Fairfield*,
June, 1834.

Nichols
*v.*
Johnson.

*Coombe*, 1 *Peters' Rep.* 640. *Seagood* v. *Meale* & al. *Prec. Chan.* 560. *Charlewood* v. *The Duke of Bedford*, 1 *Atk.* 497. *Champion* v. *Plummer*, 1 *New Rep.* 252. *Clerk* v. *Wright*, 1 *Atk.* 12. *Coles* v. *Trecothic*, 9 *Ves.* 250. *Rose* v. *Cunninghame*, 11 *Ves.* 555. *Sage* v. *Wilcox*, 6 *Conn. Rep.* 81.

It is agreed, that the memorandum in question was made by the auctioneer, the agent of both the parties; and to its sufficiency the defendant objects, that it does not sufficiently describe the estate sold. The property sold was *Philo Baldwin's* right in *Donald Baldwin's* estate. Here is reasonable certainty. Many of the quit-claim deeds in common use in this state, are not more certain in description ; and, I think, there could be no doubt but a deed from *Philo Baldwin* to this defendant, containing only the same words of description, would be effectual to transfer all his right in the estate of *Donald Baldwin*. It might be necessary, in such case, as it frequently is, in others, where exactness of description is not introduced, to refer to other certain facts to ascertain the precise location of the estate conveyed, and the amount of the grantor's interest in it ; and parol evidence will be admitted to give effect to such a deed, by applying it to its proper subject matter. 3 *Stark. Ev.* 1621. *Johnson* v. *Ronalds*, admr. 4 *Munf.* 77. *Jackson* d. *Van Vechten* & al. v. *Sill*, 11 *Johns. Rep.* 201. *Doolittle* v. *Blakeslee*, 4 *Day* 265. *Barry* v. *Coombe*, 1 *Peters* 640. This objection, therefore, cannot be sustained.

But another objection made by the defendant, I think, is available to defeat this action. The memorandum does not disclose the name of the vendor ; at least, it cannot be inferred, by any reasonable latitude of construction, that *James Nichols* was the vendor of the estate sold. And whether the book offered in evidence be examined without or within, this fact does not appear. It is not pretended, that the estate was owned or sold by more than one person : was that person *James Nichols?* His name appears but twice connected with this book or memorandum; and in neither instance as vendor. On the cover of the book, it is written—"*James Nichols'* memorandum of *Philo Baldwin's* property received by assignment." *Nichols* does not here appear as the owner, or vendor of the estate ; but on the contrary, the property is said to be *Philo Baldwin's*. On opening the book, we see this

*Fairfield,*
*June, 1834.*

Nichols
*v.*
Johnson.

entry on its first page : "A list of property charged on sched-ule, as *P. Baldwin's*"—a strong intimation at least, that the property was *Philo Baldwin's*. In another part of the same book, under the caption of "sales at auction," the name of *James Nichols* again appears ; but it is as purchaser of *John L. Hubbell's* notes,—a circumstance very much opposed to the plaintiff's construction of this memorandum ; for it cannot be very reasonably supposed, that *Nichols* was, at the same time, both vendor and vendee of the same property.

And because this note or memorandum is not, in this respect, a compliance with the requirements of the statute of frauds and perjuries, so as to charge the defendant as a purchaser of an interest in land, I am of opinion, that a new trial should be granted.

The other Judges were of the same opinion, except PETERS, J., who was absent.

New trial to be granted.