## CATHERINE ANGELOPOS
*vs.*
## ARISTOTLE COOKAS

| Superior Court | Hartford County | File No. 72670 |

MEMORANDUM FILED APRIL 3, 1945.

*Harold Strauch,* of Hartford, for the Plaintiff.

*Thomas J. Spellacy,* of Hartford, for the Defendant.

INGLIS, J. This is an action to recover damages for a claimed breach of contract to sell a leasehold interest in land and the equipment of a restaurant located on the land leased.

On December 18, 1944, the plaintiff's husband, acting on her behalf, and the defendant met at the home of Ralph G. Woolfson, an attorney at law, who was acting as the attorney for both parties. They there entered into a verbal agreement whereby it was agreed that the defendant would sell to the plaintiff the leasehold and equipment in question for the sum of $6,500. The arrangement was that $200 of the purchase price should be paid that evening and that the balance should be paid at Mr. Woolfson's office at about noon on the following day, when formal documents conveying the property should be executed. It was further agreed that Mr. Woolfson should hold

the purchase price and the documents in escrow for fourteen days to protect the purchaser under the Bulk Sales Act. There were other terms of the verbal agreement; one being a re-strictive covenant on the part of the defendant not to enter a competing business; another that the plaintiff would save the defendant harmless on his lease; another that she would assume taxes; and another that the agreement should become null and void if the plaintiff were unable to secure a restaurant license.

The only writing between the parties made at the time was the following: "Dec. 18, 1944. Rec'd of Catherine Angelopos $200.00 a/c of sale of 145 Huyshope Ave. or 141-143 Huy-shope Ave. Htfd. restaurant for $6500/00, balance of $6300/00 to be paid to Atty Woolfson Dec. 19th, 1944 when key is to be turned over. $200/100 deposit on lease to be assigned to buyer & all adjustments of rent, insurance to be given to buyer without rebate to seller. Present lease to. be assigned to buyer." This was signed, "R. G. Woolfson, Attorney" and was de-livered to Mr. Angelopos. He paid Mr. Woolfson $200 and the defendant handed Mr. Woolfson the key to the restaurant which he, the defendant, had built on the leased land.

On December 19th the defendant was at Mr. Woolfson's office at noon. The plaintiff, however, called on the telephone and asked that the closing of the transaction be postponed until the following day. To this the defendant assented, and Mr. Woolfson so advised the plaintiff. He, the defendant, took the key to the property, saying that he would have to get in to fill the radiators. He went to the Angelopos' home and took Mr. Angelopos from there to the restaurant to show him about filling the radiators. There was nothing in his speech or con-duct while with Mr. and Mrs. Angelopos to indicate that he objected to the postponement. In fact, he congratulated them on having bought the property.

During the morning of December 20th the defendant notified Mr. Woolfson that inasmuch as the plaintiff had not performed her end of the contract on December 19th, the deal was off, and he did not propose to complete it. He thereby breached the contract. When the plaintiff appeared at Mr. Woolfson's office with a certified check for $6,300 he told her what the defendant had said and refused to accept the check.

The contract entered into by the parties was one within the Statute of Frauds because it was one for the sale of an

interest in land. In order to satisfy the Statute of Frauds the memorandum by which the contract is to be proved must state with such certainty all of the essential terms of the contract that there is no need for recourse to parol evidence to prove any part of the contract. *Nichols vs. Johnson,* 10 Conn. 192, 198; *O'Sullivan vs. Overton,* 56 id. 102; *Wetkopsky vs. New Haven Gas Light Co.,* 88 id. 1; *Gendelman vs. Mongillo,* 96 id. 541; *Shoag vs. Sheftel,* 99 id. 541; *Santoro vs. Mack,* 108 id. 683. It is true as pointed out by the plaintiff that in each one of the cases just cited the memorandum which was held to be insufficient showed on its face that it did not fully state the terms of the agreement. The rule requiring a full statement of the essential terms of the agreement, however, is not limited in its application to cases where the deficiency appears on the face of the memorandum. The Statute of Frauds itself (Gen. Stat. [1930] §5982) requires that "such agreement, or some memorandum thereof" be in writing. That obviously means the whole agreement and not some parts of it. The rule generally is that the memorandum must state with reasonable certainty the terms and conditions of all of the promises constituting the contract, whether or not it shows on its face that some are lacking. *Restatement, Contracts,* §207(c). Illustration 11. And that that is the rule to which Connecticut is committed is held in *Barrett Mfg. Co. vs. D'Ambrosio,* 90 Conn. 192. In that case the written memorandum relating to the sale of coal tar omitted all reference to a term of the verbal contract to the effect that the coal tar must pass the inspection of the highway commissioner, which, it was undisputed, had been an essential part of the verbal contract; and it was held that that omission prevented the written memorandum from satisfying the statute.

In this present case it is agreed that the verbal contract contained several essential terms, such as the restrictive covenant, the assumption of taxes, etc., which are not set forth in the written memorandum. The written memorandum does not purport to be the full contract nor was it intended as such by the parties. It is not a case, therefore, where the parties are to be bound by it as a complete contract without variation under the parol evidence rule. If it were a contract not within the Statute of Frauds either party could supplement the written memorandum by parol evidence proving the additional terms. It follows that the written memorandum does not state

all of the essential terms of the verbal contract and for that reason it does not satisfy the Statute of Frauds. The contract therefore is unenforceable.

Even though the plaintiff had proved an enforceable contract she has not proved that she has sustained any damage by reason of a breach thereof. There has been no evidence as to the market value of the property agreed to be sold and therefore no evidence that such market value was in excess of the purchase price. There has been evidence as to the amount of gross return received by the defendant in the operation of the property since the breach of the contract. On any reasonable figuring, however, from the evidence available, it would appear that that gross return has not yielded any profit but probably has produced a loss when all of the expenses of the business, including rent, obsolescence, and a reasonable compensation for the owner's services, are taken into consideration. There is no evidence which would justify a finding that the plaintiff would have made any profit in the business if she had operated it. A third element of damage is claimed by the plaintiff in that evidence was introduced that she had an agreement to resell the property to one Maly at a profit. That evidence, however, is not to be believed, and therefore would not justify a finding that the plaintiff had been damaged by a loss of a profit on such a resale.

Judgment may enter for the defendant to recover of the plaintiff his taxable costs.