# CHARLESTON.

### PHILIP CAREY MANUFACTURING CO. v. WATSON.

### Submitted June 10, 1905, Decided October 31, 1905.

1. ASSUMPSIT—*Office Judgment—Order of Inquiry—Plea.*

    In an action of *assumpsit*, where an order for inquiry of damages is required, the office judgment entered at rules does not become final on the last day of the next succeeding term of court, not having been previously set aside, so as to bar a defense thereafter; but the defendant may plead to issue at any time before the order for inquiry of damages is executed. (p. 189.)

2. WRITTEN AGREEMENT, ALTERATION OF.

    If a written agreement not under seal, be altered by the party claiming under it in a material part: *Held*, he can never recover upon the agreement so altered, nor can he avail himself of the contract in its original and true form. *Newell* v. *Mayberry*, 3 Leigh 250. (p. 195.)

3. WRITTEN AGREEMENT, ALTERATION OF.

    The materiality of the alteration is a question of law for the court upon the admissibility of the altered agreement in evidence. (p. 195.)

4. WRITTEN AGREEMENT, ALTERATION OF—*Burden of Proof.*

    Where a material alteration is shown to have been made after the execution of the agreement, the burden is on the party producing and relying upon the agreement to explain the alteration by showing that it was made under circumstances rendering it lawful. (p. 195.)

5. WRITTEN AGREEMENT, ALTERATION OF—*Fraud.*

   In the absence of such explanation the alteration will be presumed to have been made by the party producing the agreement, or with his privity and fraudulently so far as legal fraud attaches to a wilful change of an agreement by a. party thereto. (p. 195.)

6. WRITTEN AGREEMENT, ALTERATION OF.

   If such material alteration appears to have been made fraudulently by the party producing and relying on the agreement, or with his privity, such party can not recover on the original consideration or demand, (p. 196.)

Error to Circuit Court, Harrison County.

Action of *assumpsit* by Philip Carey Manufacturing Company against Andrew J. Watson. Verdict for defendant and plaintiff brings error.

*Affirmed.*

E. G. SMITH, for plaintiff in error.

DAVIS & DAVIS, and E. BRYAN TEMPLETON, for defendant in. error.

COX, JUDGE :

In an action of *assumpsit* by the Philip Carey Manufacturing Company against Andrew J. Watson, in the circuit court of Harrison county, there was a trial by jury and motion by defendant to exclude plaintiff's evidence and to direct a verdict for defendant, which was sustained and a verdict accordingly and judgment of dismissal thereon; and plaintiff brings error.

The first question raised is: Did the office judgment in this action become final on the last day of the next term of court after it was entered at rules, it not being previously set aside and there being no plea to issue at that term? This question involves the consideration of parts of sections 44, 45, 46 and 47 of chapter 125, Code of 1899. The declaration is in the usual form and contains only the common counts. The plaintiff's bill of particulars, accompanied by affidavit, charging the defendant with a balance of $640.75 on an open account, after allowing certain credits, was filed in court at the next term after office judgment. The action was brought on the 26th day of July to August rules following. At August rules the clerk made an entry of

summons executed, declaration filed and conditional judg-
ment. At September rules, the clerk made an entry of
conditional judgment confirmed and order for inquiry of
damages. The September term of court, 1902, followed.
The action was twice continued by consent of both parties,
once at that term and once at the January term following.
On February 5, 1903, in term, the defendant tendered his
plea of the general issue, accompanied by affidavit, to which
plea plaintiff objected as coming too late, but the objection
was overruled and the plea filed.    In this action the order
for inquiry of damages was proper under sections 44 and 45.
This was not an action for debt on bond or other writing for
the payment of money, or against the drawer or endorser of
a bill of exchange or negotiable note.    Nor was it an action
of debt or *scire facias* upon judgment or recognizance, but an
action on an open account, and was not exempted, by the
provisions of section 45, from the necessity of an order for
inquiry of damages.    As to the finality of office judgment
at the next term, this action does not fall under the provi-
sions of section 46, because its provisions apply to cases
wherein there is no order for inquiry of damages.    We are,
then, left to the provisions of section 47 to give finality to
this office judgment on the last day of the next term of court,
if it is to have such finality.    We confess that the language of
section 47 appears to be somewhat doubtful, but in constru-
ing it we must consider all the provisions of the statute re-
lating to the same subject matter in order that we may de-
termine the scope and intent of this section.    Does this
section, standing alone, provide for the finality of office
judgment in any case on the last day of the next term of
court?    It does not seem to do so.    We read it in vain for
any positive declaration that an office judgment shall become
final in any action, at any term of court.    The general object
of this section seems to be to provide a way of setting aside
an office judgment which otherwise would become final under
some other provision of law.    If this be true, we look for
that other provision and find it in section 46, which provides
for finality in a case where there is no order for an inquiry
of damages.    The element of doubt as to this construction
is the clause therein, "whether an order for an inquiry of
damages has been made therein or not;" but this clause does

not purport to make finality.   It is found in the provision made to enable the defendant to prevent finality.   We think it an unwarranted inference to say that this clause, or any language in section 47, gives finality to an office judgment, if not previously set aside, on the last day of the next term in any action where an order of inquiry of damages is required.   The common law right to plead should not be taken away by such an inference, nor by mere construction.   The construction we now give section 47 is the same given to it by this Court in the case of *Marstiller* v. *Ward*, 52 W. Va. 74, in which JUDGE BRANNON, delivering the opinion of the Court, said:   "In any action for (not of) debt on any of the writings specified in section 45, and in an action of debt on a judgment, or *scire facias* on a judgment, there must be an issuable plea at the first term after office judgment; in all other actions, on contract or for tort, the plea may come later.   I would say that in an action on a bond with collateral condition there could be a plea at any time before trial, as it would require an inquiry of damages; otherwise in an action on a single bill for money."   Under this construction the admission of defendant's plea was not error.

The next question raised by the record is:   Did the circuit court err in sustaining the defendant's motion to exclude plaintiff's evidence and direct a verdict for defendant? The consideration of this question makes necessary a further statement of the facts appearing in the record.   The balance claimed by plaintiff in its bill of particulars was for a car load of cement roofing, which it claimed to have sold and delivered to defendant.   To sustain its case, it offered only one witness, its agent who made the contract with defendant upon which it relies.   During the direct examination of this witness a paper, purporting to be the written order or contract between the parties for the sale and delivery of the car load of roofing, was produced and the witness testified to the genuineness of the signatures of the parties thereto, and the paper was admitted in evidence.   The essential part of this paper is as follows:

"Aug. 6, 1901.
"To the Philip Carey Mfg. Co.

"Gentlemen:  You will please enter our order and ship at once 1 car load cement roofing and same to be settled for Dec. 28,

1901, to be settled for as sold. * * * * 300 squares cement roofing "Standard" complete @ 275 per sq. All prices F O B Salem.

"Ship to A. J. Watson, City, Salem. County, Harrison. State, W. Va. Via B. & O. R. R.

"Yours respectfully,

"A. J. Watson.

"Accepted by the Philip Carey Mfg. Co. per H. Clayton."

Near the right hand margin of this paper there appeared in writing the following: "I agree to help sell this car load", and signed "H. C." (the initials of name of plaintiff's agent). The witness further testified to the shipment and delivery of the car load of roofing to defendant, accompanied by a bill of sale therefor, and that on December 2, 1901, plaintiff received a payment of $140.75 from defendant, and on the same date gave a credit for freight of of $43.50, leaving a balance due plaintiff of $640.75. Witness also produced a letter from defendant, bearing date December 17, 1901, which was read to the jury, the contents of which is as follows: "Your letter received this morning, and will say in reply that my store and all my stock was burned, including roofing, 56 houses were burned and most all business houses. I want you to come as soon as possible. I am, Yours respt. A. J. Watson."

On cross-examination of this witness it appeared that the original contract or order for the car load of roofing was executed in duplicate; that the duplicates were prepared by the witness, plaintiff's agent, by placing a carbon paper between a white and a yellow sheet of paper, so that when the contract or order was written on the white sheet an exact copy was produced on the yellow sheet, and, owing to the character of the paper used, a copy, or rather a reversed copy, at least in part, also appeared on the reverse side of the white sheet. The white sheet was the one retained and offered in evidence by plaintiff, and the yellow sheet was kept by defendant. Two alterations appeared in the one offered by plaintiff, when compared with the one kept by defendant. The one kept by defendant was produced and offered in evidence on the cross-examination of this witness. On redirect examination of this witness by plaintiff's attorney the question. "Have you any explanation to offer as to the discrepancy between these two papers?" was asked, to which witness replied, "Nothing at all. As I stated before, I

went back afterwards and went over the matter. I don't deny that that is a copy of the original order." And when asked, "Then you are willing to accept as the true order the one for which Mr. Watson contends, are you?", he replied, "Yes, Sir." The two alterations in the duplicate offered by plaintiff were as follows: first, the change of the words, "I agree to sell this car load," so as to read, "I agree to help sell this car load"; and second, the change of the words, "to be settled for December 28, 1901, of what sold", so as to read, "to be settled for December 28, 1901, as sold."

It is not necessary for us to trace the doctrine relating to the alteration of written agreements, in England and this country, from its origin in *Pigot's case*, 11 Coke, 27, to the present time. This is ably and exhaustively done by Judge Dillon in 2 Cyc. 137; and by Mr. Freeman and his associates in a note to the case of *Burgess* v. *Blake*, 86 Am. St. Rep. 80, to which note we shall hereafter refer in this opinion as Freeman's note. We shall content ourselves with a brief statement of the principles deducible from the authorities, which we deem applicable to this case.

Freeman's note says the general rule is, that "any change in a material part of a written instrument, after such instrument has been fully executed, by a party to such instrument or one claiming under him, and without the consent of the party sought to be charged, renders such instrument void." The authority is universal in this country, except in the states of Missouri and New Jersey, that no alteration vitiates an instrument, unless it is material. 2 Cyc. 190; Freeman's note, 84 and 85; *Yeager* v. *Musgrave*, 28 W. Va. 90. We must therefore see if the alterations here shown were material. Plaintiff contended that it was entitled to recover the price of the goods sold and delivered under the contract. The defendant contended that the goods were merely consigned to him by plaintiff, and not sold to him. Upon this question the alterations were material. The mere statement of the changes made seems to be a sufficient answer as to their materiality. There is a material difference, in legal effect, between agreeing to sell a car load of roofing and in agreeing to help sell it; and there is a material difference in the legal effect of an agreement for settlement, as to a car

load of roofing, on a certain date, for that part which had been sold, and an agreement for settlement as sold, especially upon the question as to whether or not the car load was actually sold, or only consigned. The expression "as sold" may imply that the whole car load was to be settled for ultimately, while the expression "of what sold" may imply that defendant would not at any time be compelled to settle for more than the part which had been sold. The alterations were material.

It is contended that the question of whether or not they were material alterations should have been left to the jury. We think not. The question of the materiality of the alterations is a question of law for the court upon the admissibility of the altered agreement in evidence. *Newell* v. *Mayberry*, 3 Leigh 250; 2 Cyc. 256; and Freeman's note, 84. There was no denial that the alterations had been made. There was nothing for the jury to pass on as to that question. The fact of alteration was plainly shown by plaintiff's evidence. In this respect this case differs from the case of *Conner* v. *Fleshman*, 4 W. Va. 639, where it was said that, under the circumstances of that case, the question whether the instrument had been mutilated was for the jury. We are relieved of the necessity of examining the many conflicting rules and authorities as to the presumption, or want of presumption as to the time when the alterations were made, that is, whether they were made before, at the time of, or after the execution of the agreement, because it clearly appears by the plaintiff's evidence that they were made after the execution of the contract. This witness said, in effect, that the duplicate produced by defendant, which was without alteration, was a true copy of the original contract. If this is correct, there was no time other than after the execution of the contract, when the alterations could have been made. When a material alteration after the execution of an agreement is made to appear, the party producing the agreement has the burden of explaining the alteration—he must show that the change was made under circumstances rendering it lawful, and unless he does so it will be presumed to have been made by the party producing it or with his privity, and fraudulently in so far as legal fraud attaches to to a wilful change of an agreement by one of the

parties thereto. *Piercy* v. *Piercy*, 5 W. Va. 199; 2 Cyc. 234–5.

It is further contended that notwithstanding the contract was destroyed as evidence by the alterations, the plaintiff was entitled to recover upon the case made by it. The goods were shown to have been delivered to the defendant, and the defendent's duplicate of the contract, in an unaltered condition, was before the jury. Must plaintiff, simply because the duplicate produced by it was destroyed by fraudulent alterations, lose the benefit which the law would give to it upon the facts, if there had been no fraudulent alteration? In other words, does the fraudulent alteration prevent recovery on the original consideration? It is said in 2 Cyc., 183, that "It has been considered in some cases that where a party by his own act alters an instrument so that it cannot be the foundation of any legal remedy, he will not be permitted to prove the promise contained in it by any other evidence, and this principle prevents a resort to the common counts, or a recovery on the original consideration." Among the cases cited to sustain this view is the case of *Newell* v. *Mayberry*, *supra*, and that case is binding authority on this Court. Judge Tucker, delivering the opinion in that case, said: "The materiality of the alteration is, I take it, matter for the decision of the court; and moreover, if it had appeared that the alteration was made by Mayberry, or any other by his procurement, then he could never recover upon this contract, nor could he be permitted to establish it by any other evidence, or even to avail himself of the contract according to its original and true character." See also Freeman's note, 119, 122. There seems to be no authority allowing recovery on the original consideration where there has been a material and fraudulent alteration by the plaintiff, or with his privity. 2 Cyc. 183–5; Freeman's note, 122–3. Nor is the plaintiff permitted to establish the contract by any other evidence, such as the duplicate retained by defendant. *Newell* v. *Mayberry*, *supra;* Freeman's note, 118. This rule may seem harsh, but the reasons for it are said to be that a written agreement in the hands of an adverse party is easily susceptible of alteration to the injury of the party charged thereby. Many written contracts are negotiable and perform important functions in commercial transactions. It is

of the highest importance to the commercial world that they be preserved in their original state or condition. Public policy demands this for the prevention of frauds upon innocent persons. The most effective means of preserving the integrity of such agreements is the rule, that a material alteration destroys the agreement so that no recovery can be had upon it, either in its original or its altered condition. The object of the rule is to enjoin the highest care upon the holder of the agreement, and to punish him with loss for his negligent and fraudulent conduct.

Applying this rule to this case, the plaintiff was not entitled to recover either upon proof of the true original contract, or to recover upon the original consideration. Therefore there is no error in the action of the court sustaining the motion to exclude the evidence and to direct a verdict for defendant, nor in the action of the court in refusing to set aside the verdict and in entering the judgment of dismissal.

The judgment of the circuit court is affirmed.

*Affirmed.*