# CHARLESTON.

### WALDRON et al. v. WALLER et als.

Submitted February 16, 1909.   Decided April 27, 1909.

1. DEEDS—*Alteration by Party—Effect.*

   If after execution a deed for land be altered by the grantee' or by his privity so as to make it describe land not granted thereby, its operation as an executed contract is not affected, and the title vested by it is not disturbed.  The effect of such unauthorized alteration is to deprive the party making it of all future benefits of an executory nature or obligation which he might have derived under the deed. (p. 609.)

2. SAME—*Alteration—Effect Upon Rights of Parties.*

   Such unauthorized alteration of a deed will not entitle the grantor by a suit in equity to set aside his deed and be reinvested with the title to the land conveyed. (p. 609.)

3. SAME—*Acknowledgment—Alteration — Redelivery — Reacknowledgment.*

   If, after it has been executed and delivered, a deed for land, with the consent of the grantors, be altered so as to make it describe a larger boundary, in order to make it effective to convey the additional land it should be re-delivered, and if it has been acknowledged before the alteration it should be again acknowledged. (p. 610.)

4. REFORMATION OF INSTRUMENTS—*Proceedings and Relief.*

   In a suit by a grantor to set aside a deed and be re-invested with the title to the land conveyed on the ground that the same has been altered without his consent, the grantee therein, on his cross-bill answer charging that the land covered by the alteration represents the land actually purchased and paid for, and of which possession was given, and on which valuable improvements have been made, with the knowledge and consent of the grantor, may have specific execution of the original contract, and the grantor decreed to make a new deed correcting the mistake in the original deed, and in default thereof by him, have a commissioner appointed to· make, execute and deliver such corrected deed on his behalf. (p. 610.)

Appeal from Circuit Court, Mingo County.

Bill by Hester A. Waldron and another against Sarah A. Waller and· others.  Decree for defendants, and complainants appeal.

*Modified, and as modified affirmed.*

65 W. Va.

G. R. C. WILES, for appellants.

DOUGLAS W. BROWN and STOKES & BRONSON, for appellees.

MILLER, PRESIDENT:

Hester A. and M. H. Waldron, May 2, 1906, sued Sarah A. Waller and her four infant children in the circuit court of Mingo county, seeking to set aside and vacate a certain deed made by them, April 13, 1904, to the said Sarah A. Waller and George Waller, her husband, and to have the title to the lots conveyed, reinvested in them, by which deed in consideration of one dollar in hand paid and acknowledged, and the further sum of one hundred dollars to be paid in six months,. evidenced by note, they released and quitclaimed to said grantees all their rights, title and interest in and to a certain lot of land in Fairfax, Mingo county, conveyed to them, December 8, 1902, by A. J. Gauze and wife, describing it my metes and bounds; and also purporting to convey with covenants of general warranty a certain lot adjoining the first, bounded as follows: "Beginning at a stake on the line of the Norfolk & Western Railway right of way, at a point 36 feet from the line of the lot now owned by the said Eva Deskins; thence with the line of said right of way 25 feet to a stake; running in a North Westerly direction; thence south 61.30 degrees and 5 minutes west about 150 feet to the water edge of Tug River; thence with the meanders of said river to a bunch of grape vines at the corner of the lot now owned by the said Sarah A. Waller, standing near the water edge; thence with the line of said lot to the beginning," the object of said deed being, as recited on its face, to settle and compromise a chancery suit then pending in said court, involving a dispute as to a boundary line of said lots; and, also seeking to set aside another deed made May 26, 1904, by said George Waller to the said Sarah A. Waller, and her said infant children, conveying to them the same lot, and for general relief.

On final hearing March 8, 1907, on bill, answer of Sarah A. Waller and separate answer of said infant defendants, by guardian *ad litem,* and depositions taken and filed, the court below being of opinion that the plaintiffs were not entitled to the relief prayed for, dismissed their bill, and they have appealed.

It is conceded with respect to the deed of April 13, 1904, as

originally executed and delivered, one of the calls in the boundary of the last lot conveyed, which reads, "thence S. 55 degrees and 5 minutes W. about 150 feet to the water edge of Tug River," was changed before recordation so as to read, "thence south 61.30 degrees·and 5 minutes west about 150 feet to the water edge of Tug River;" and that as recorded it has on its face, following the acknowledgment, a memorandum made April 23, 1904, by the county surveyor, of a re-survey of the lot conveyed, changing said course from "S. 55.5" to "S. 61.30 W." However in the deed from George R. Waller to Sarah A. Waller and children, made May 26, 1904, the description of the lot is the same as in the original.

The only evidence taken on behalf of defendants is the testimony of Gaujot, the surveyor who made the re-survey, who says, respecting this survey and the change made by him in the deed, that on the day he re-surveyed the lot and made the change in the description, and made the memorandum thereof on the deed, he received a message to come to Naugatuck; and when he got there he found the Wallers wanted him to run out the true course of the lot which he understood had been recently purchased by them from the Waldrons; that he did the surveying in the presence of M. H. Waldron, and that in running these courses and distances he found that the change in the course as shown in the memorandum and made by him on the deed was necessary; that Waldron was present at the time and consented that the change should be made, and when made that he consented to the re-delivery of the deed, and was present when he re-delivered the deed to the Wallers; that he took supper with the Waldrons the same evening and heard Waldron talk the matter over with Mrs. Waldron and tell her he had made the change in the deed and heard her say, "it was all right with her;" that before making the re-survey they waited for Waldron to come, and when he came he pointed out the monuments to him by which to make it, and that the making of the change in the deed was perfectly satisfactory to the Waldrons.

Besides their own depositions the plaintiffs took the testimony of Henry P. Clark, a relative, and of their son, E. H. Waldron. Waldron admits his presence at the survey, as well as that of Clark, but denies that he consented to the change, and both he and Mrs. Waldron deny the alleged conversation the same

evening in the presence of Gaujot, as testified to by him, and they
also deny that she then consented to the change as made, or that
either of them knew the change had been made until a short time.
before suit brought, but on the contrary Waldron testifies, (his
testimony being objected to by defendant for incompetency,)
that in a conversation with George Waller, now deceased, he re-
fused his request to make the change, but did say to him that
if Mrs. Waldron wanted to change it he could get her to make a
new deed. Mrs. Waldron admits that her husband was her
agent, and acted for her in the transaction with the Wallers. The
witness Clark admits he carried the chain for Gaujot, in making
the re-survey, that Waldron was present, but that he heard him
say to George Waller he would not make a new deed, or change
it, that he should go and see Mrs. Waldron and if she would
change it it would be all right. He admits that when the re-
survey was being made there seemed to be no dispute as to the
lines, and that after Gaujot got through his surveying Waldron
seemed satisfied.

It does not appear from any evidence in the case what was the
real object of making the change in the deed. It is intimated
in the evidence of the surveyor that the change was necessary
in order to make it close. But in the answer of Mrs. Waller
calling for affirmative relief, and which she asks may be treated
as a cross bill, and to which there was no special replication
controverting the allegations thereof, she alleges that the strip
of land purchased by her and her husband was not correctly de-
scribed in the deed as originally made; that the change or alter-
ation made therein by Gaujot was necessary to make it conform
to the contract of purchase; that the land covered by the deed
as changed and altered is the exact lot of land which the plaintiffs
sold to her and her husband, and that the change was made in
the deed with the knowledge and consent of the plaintiffs, and
without any fraudulent purpose or intent on the part of the
grantees; that since then she has placed on the property large
and valuable improvements, costing many hundreds of dollars,
and has been in the actual possession and occupancy of the
property described with the full knowledge and acquiescence
of the plaintiffs therein until the institution of this suit, and that
they are now seeking, with fraudulent purposes and by means
thereof to obtain from her and her children, for the paltry sum

of one hundred dollars, the original purchase money tendered, property worth thousands of dollars.

What then are the rights of the parties? The bill seems to have been framed and to proceed upon the theory that where a deed of conveyance has been altered by or at the instance of the grantee, in a material matter, such alteration not only destroys the deed, but also entitles the grantor to be re-invested with the title to the land as conveyed. This, however, is not the law. As stated by Mr. Devlin, 1 Devlin on Deeds, section 460, "The true rule seems to be that if the deed is altered after execution by a party claiming some benefit under it, or by his privity, its operation as an executed contract is not affected." And that "titles vested by it are not disturbed, but the party making the alteration is deprived of all future benefits that he might have derived from it, and cannot enforce any executory obligation contained in it." When the title to land has once vested, any alteration in the deed, made by the grantee, though material, will not deprive him of his title or re-invest it in the grantor. If anything is destroyed by the alteration it is the deed and not the title. A deed may be altered, mutilated, changed or wholly destroyed so as to be no longer competent evidence, or capable of being introduced in evidence, yet the title vested by the grant is not thereby destroyed. 1 Devlin on Deeds, section 461*a*, and cases cited; 2 Cyc. 721, 722, and cases; *Seibel* v. *Rapp*, 85 Va. 30; *Vaughn* v. *Moore*, 89 Va. 925; *Graysons* v. *Richards*, 10 Leigh 57; *Furguson* v. *Bond*, 39 W. Va. 561. This is not a case like that of *Philip Carey Mfg. Co.* v. *Watson*, 58 W. Va. 189, and cases of that class, relied on by plaintiffs, where an altered instrument is offered in evidence by a party in support of some right of action claimed by him under it. In such a case the material alteration in the instrument deprives the holder responsible for it of any executory rights or right of action thereon, and destroys its evidential force and effect. 1 Devlin on Deeds, *supra*, section 460; *Burgess* v. *Blake*, 86 Am. St. Rep. 78, and monographic note.

But what effect may, be given to a deed so materially altered as to the property not originally covered or conveyed by it? The authorities we think make it clear that although such alteration may have been with the consent of the grantors the deed cannot operate to invest in the grantee land not covered by the

original grant, without a re-delivery of the deed by them, and if it has been acknowledged before the alteration, the deed should be again acknowledged. 1 Devlin on Deeds, section 462*a*, citing among other cases *Moelle* v. *Sherwood,* 148 U. S. 21. The evidence of the surveyor in this case tends in a slight degree, but we think not sufficient to show a re-delivery of the deed to the grantees after the alteration was made by him, and there is no claim that after the modification of the deed it was re-acknowledged, and only by a re-acknowledgment by Mrs. Waldron, a married woman, could she be divested of her title in the land not covered by the original deed.

But could and should any relief have been granted plaintiffs on their bill? It is clear they cannot, as prayed for, be re-invested with the title to the land covered by their original deed. They have not framed their bill with the view of removing a cloud from the title to that part of the lot not covered by the original deed, and we do not think that on the bill and evidence, and the prayer for general relief they are entitled to any such relief.

But is Mrs. Waller upon her cross bill answer entitled to have the alleged mistake in the original deed now corrected so as to recover the lot according to the altered description therein, and according to the original contract, as she alleges it. She specifically alleges in her answer that the original contract covered the lot as now described in the altered deed and for which she and her husband paid full consideration, and were put in the actual possession of the property, and that they have placed valuable improvements thereon, with the knowledge, consent and acquiescence of the plaintiffs. These allegations of her answer are not controverted by the plaintiffs, and if constituting good grounds for relief and well pleaded, must be taken as true. We think the allegations of this answer sufficient, for if the contract was as alleged, and there was a mistake in the original deed and defendants have been in possession of and improved the lot with the knowledge, consent and acquiescence of the plaintiffs, there has been such partial execution of the original contract as to entitle defendants to specific execution thereof, and to a correction of the deed in conformity thereto, and to be quieted in their right and title to the lot. A decree will therefore be entered here in modification of the decree appealed from, that the

plaintiffs do within thirty days from the date this cause is re-docketed in the circuit court make, execute and deliver to defendants a deed of correction describing the last mentioned lot therein according to the description thereof contained in the original deed of April 13, 1904, as recorded, and that if they shall fail to do so then that a special commissioner be appointed by the circuit court for that purpose, who shall make, execute, acknowledge and deliver to defendants such a deed for and on behalf of plaintiffs. And the cause will be remanded to the circuit court for the purpose of seeing that the mandate of this Court is faithfully executed. And the appellees who have substantially prevailed here will have costs incurred in this Court, as well as in the circuit court, whose decree except as modified will be affirmed.

*Modified, and as Modified Affirmed.*