# CHARLESTON.

FRANK MAYER v. J. M. JOHNSON et al.

(No. 5604)

Submitted April 20, 1926.    Decided April 27, 1926.

1. TRUSTS—*Where One Party to Contract Pays All or Part of Purchase Money, and Title to Land is Taken in Name of Another, "Constructive or Resulting Trust" Arises; Constructive or Resulting Trust, Arising in Land From Payment of Part or All of Purchase Price, May be Shown by Parol Evidence.*

Where one party to a contract pays all or a part of the purchase money for land, and the title thereto is taken in the name of the other, a constructive or resulting trust arises in favor of the party paying, as to the whole of the land, or *pro tanto;* and such trust need not be created, declared or proven by writing, but may be shown by parol evidence. (p. 526.)

(Trusts, 39 Cyc. pp. 118, 155.)

2. LIMITATION OF ACTIONS—TRUSTS—*Statute of Limitations and Laches do Not Apply to Constructive or Resulting Trust Arising From Payment of All or Part of Purchase Money for Land Until From Time Trustee by Unequivocal Words or Acts Brings to Beneficiary Notice of Repudiation Calling on Him Promptly to Assert Rights.*

The statute of limitations and laches have no application to such a trust until from the time the trustee by unequivocal words or acts brings to the notice of the beneficiary such repudiation of the trust as to call upon him to promptly assert his equitable rights. (p. 527.)

(Limitation of Actions, 37 C. J. § 269; Trusts, 39 Cyc. p. 606.)

3. TRUSTS—*Beneficiary of Resulting Trust Arising From Payment of Part or All of Purchase Price for Land is Not Estopped by Conduct Unless it Was His Duty to Speak or Act, and He Has by Silence, False Statement, or Refusal to Act, Intentionally Misled Another to His Prejudice Concerning Material Matter.*

And such beneficiary is not estopped by his conduct unless it was his duty to speak or act, and he has by his silence, false statement or refusal to act, intentionally misled another to his prejudice concerning a material matter. (p. 527.)

(Estoppel, 21 C. J. §§ 122, 154; Trusts, 39 Cyc. p. 519.)

4.  ALTERATION OF INSTRUMENTS—*If Party to Contract, Without Consent of the Other, Alters it in Material Part Thereof, He Cannot Enforce it as Originally Made or in Altered Form in Any Forum.*

If a party to a contract without the consent of the other, alter the contract in a material part thereof, he cannot enforce the same as originally made or in its altered form, in any forum.   (p. 528.)

(Alteration of Instruments, 2 C. J. § 5.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by Frank Mayer against J. M. Johnson and others. From an adverse decree, defendant F. D. Clemens appeals.

*Reversed and remanded.*

*W. E. R. Byrne* and *John L. Rowan,* for appellant.

*R. E. McCabe, H. W. Bowers,* and *Staige Davis,* for appellee Julian M. Johnson.

MILLER, JUDGE:

The original bill filed by plaintiff in this cause had for its immediate object the subjection to the payment of certain debts conceded to be owing to him by defendants Johnson and Clemens, some jointly, some by separate obligations, their respective interests in a certain lot at the southeast corner of State and Summers streets, in the city of Charleston.  The answer of Johnson denied, that of Clemens affirmed Clemens' interest in the lot as alleged in the bill; and by cross pleadings by Clemens against Johnson, and by Johnson against Clemens, two main issues of law and fact were presented, which by the final decree of August 8, 1925, appealed from, were adjudged in favor of Johnson, namely: First, whether or not the lot was purchased and the title taken and held in the name of Johnson for himself and Clemens; Second, whether or not a certain paper, dated April 27, 1921, was a binding contract of compromise, or merely a proposition to be submitted to and approved by W. E. R. Byrne, counsel for Clemens, who was in charge of the case for Clemens, and

was at the time engaged in negotiations for a settlement of the controversy, with counsel for Johnson.

The decree complained of specifically adjudged: First, that the purchase from and the conveyance by Wherle to Johnson, of said lot, by deed of April 14, 1905, was free from any trust or any claim of any nature whatsoever in favor of said Clemens, and that Johnson was entitled to hold the same free of any claim thereon of said Clemens or of the plaintiff Mayer; Second, that Mayer, the plaintiff, recover of Johnson $6,441.23, the sum of two notes, one for $2,000.00, and the other for $1,000.00, and the accrued interest thereon, thereby ignoring the liability of said Clemens on the $2,000.00 note as joint maker thereof, and of his liability on the $1,000.00 note, being the sole maker thereof; Third, that Clemens recover of Johnson $10,056.67, the amount adjudged to be due him under the alleged compromise agreement of April 27, 1921.

Of course the first and foremost question presented is whether or not Clemens was from the beginning interested in the purchase of the lot from Wherle in 1905, and whether the title was taken by Johnson in trust for himself and Clemens. Based on the pleadings and proofs taken and filed in the cause, we do not see how there can be a shadow of doubt about the fact that Clemens was interested in the purchase. The price of the lot was $7,500.00; and the terms of the purchase were, $2,500.00 cash, and the balance, $5,000.00, was represented by three notes of Johnson, dated April 14, 1905, for $1,666.67 each, payable with interest in one, two and three years, respectively, and secured by a vendor's lien reserved in the deed. It is proven beyond any question of doubt, indeed is substantially admitted, that Clemens furnished the money, $2,500.00 to make the cash payment. He gave his check for that sum to Johnson, which Johnson deposited to his own credit, and gave his check to Wherle on the same day for the cash payment. Johnson attempts to account for this transaction by saying that he expects he borrowed the money from Clemens; but he gave no evidence thereof to Clemens therefor, and produced no evidence of repayment of the alleged loan, as such. Clemens says that the understand-

ing was that Johnson was to make payment of a sufficient part of the residue to make him equal with him in the purchase money paid and to be paid, but which he failed to do, and that the sum decreed in favor of said Mayer represented money borrowed by Clemens on notes endorsed by Mayer and discounted in the bank, and which remained wholly unpaid. The first deferred payment was made, not by Johnson, but out of the proceeds of the joint note of $2,000.00 so endorsed by Mayer and discounted at the bank.

The trustee character of Johnson's purchase and holding of the title is further established by his subsequent specific admissions to Mrs. Clemens, to Frank Mayer, the plaintiff in the original bill, to W. E. R. Byrne, Clemens' counsel, and others, that he and Clemens owned the property in joint interest, whose evidence it is unnecessary to relate. It is full, and convincing beyond cavil. He admitted the fact to Mayer, when Mayer's endorsement of said notes was procured by Clemens: he admitted it to Byrne when he and Clemens were endeavoring to sell the lot through Byrne; and he admitted it also to Mrs. Clemens. It is sought to overcome the effect of all this evidence by the silence of Clemens as to his interest in the property in several suits brought by creditors of Johnson and Clemens to subject the property to the payment of their debts, and when money was borrowed from time to time in the name of Johnson to pay off and discharge purchase money and other debts. But we fail to find anything on the record of those suits calling upon Clemens to assert his interest. Evidently both Johnson and Clemens became financially embarrassed in the meantime, and were assisting each other financially, not only to pay off the balance of the purchase money on the lot, but in other matters. On one occasion Johnson called upon Clemens to do some paving work in connection with the lot, and Clemens' omission to respond, explained by the latter, is pointed to as evidence against Clemens' claim to an interest in the property; but if Clemens had no interest in this property, what right had Johnson to call upon him to perform work and spend money on the property? Our conclusion on the evidence is that the circuit court

erred to the prejudice of the appellant in its finding that no trust was established in favor of Clemens.

Several propositions of law are advanced in support of the decree denying the trust relationship of Johnson. The first is that oral evidence to establish a trust must be so strong, clear and convincing, and unquestionable, and such as to remove all doubt in the mind of the chancellor; citing for the proposition: *Johnson* v. *Crim,* 67 W. Va. 499; *Hatfield* v. *Allison,* 57 W. Va. 374; *Armstrong* v. *Bailey,* 43 W. Va. 778; *Troll* v. *Carter,* 15 W. Va. 567. In our opinion the evidence, not wholly in parol, fully meets all requirements. There are the checks of Clemens, antedating the deed, giving in payment of parts of the purchase money, not explained by Johnson, except on the theory of a trust interest in the property. In *Currence* v. *Moore,* 43 W. Va. 368, syl. 5, the proposition relied on by counsel for plaintiff is stated that where one party pays all *or part* of the purchase money for land, and title is taken in the name of another, a constructive trust, called a resulting trust, arises in favor of the party paying, as to the whole land, or *pro tanto,* a proposition many times recognized or affirmed since then. *Cassady* v. *Cassady,* 74 W. Va. 53, 54; *Lantz* v. *Tumlin,* Id. 658, 664; *Watts Bros. & Co.* v. *Frith,* 79 W. Va. 89, 91-2. Neither an express nor a constructive trust need be created, declared or proven in writing in this state, but may be shown by parol evidence. *Currence* v. *Moore, supra; Floyd* v. *Duffy,* 68 W. Va. 339. The foregoing and other cases hold that when prior to the conveyance of the legal title to land purchased for the joint benefit of the grantee and another party, and the latter complies with such agreement and understanding with respect to the payment of purchase money a direct or express trust is thereby created. A very pertinent piece of evidence going to establish Johnson's trusteeship is his admission in explanation of his effort to have Clemens furnish some cinders and to pave the sidewalks. In answer to a question he said: ''No, sir, I never recollect anything about any cinders, but when I thought Clemens was going to take a half interest in that lot

and pay for it I tried to get him to repair a sidewalk out there. I don't know whether I wrote him or not.''

Another proposition affirmed by counsel for Johnson in defense of the decree is that Clemens is estopped by his conduct, and by time and laches, that he waited to assert his rights long after the defendant acted and treated the property as his own, and until it has grown in value, and that it would now be inequitable to allow him to do so; relying on *Ruckman* v. *Cox,* 63 W. Va. 74; *Mitchell* v. *Cornell,* 88 W. Va. 194; *Patrick* v. *Stark,* 62 W. Va. 602; *Lynch* v. *Lowther,* 90 W. Va. 381; *Jarvis* v. *Martin's Admr.,* 45 W. Va. 347; *Troll* v. *Carter, supra; O'Neal* v. *Moore,* 78 W. Va. 296; *Snyder* v. *Bridge Co.,* 65 W. Va. 1, 8; and *Carter* v. *Price,* 85 W. Va. 744.

On the question of estoppel *Ruckman* v. *Cox* holds that the statute of limitation and laches respecting express trusts have no application until from the time the trustee by unequivocal words or acts brings to the notice of the beneficiary such repudiation of the trust as to call upon him to promptly assert his equitable rights. This is Hornbook law, reaffirmed in *Keller* v. *Washington,* 83 W. Va. 659, 667; *Bennett* v. *Bennett,* 92 W. Va. 391, 398, and many other cases. Besides, as laid down in some of the cases cited and relied on, this principle has no application unless it appears that the party sought to be affected has been injured by the laches or delay. As stated in one of our decisions: ''A person is not estopped by his conduct, unless it was his duty to speak or act, and he has, by his silence, false statement or refusal to act, intentionally misled another to his prejudice concerning a material matter.'' *Columbus Onyx & Marble Co.* v. *Miller,* 74 W. Va. 686. In line with this case are: *Shelton* v. *Johnson,* 82 W. Va. 319; *Roberts* v. *Crouse,* 89 W. Va. 15, and cases cited. In what way has Johnson been misled by anything said or done by Clemens? All the suits and other transactions brought against the parties to the contract since the deed to Johnson, have simply been to provide for payment of the purchase money, taxes, street pavement, and for the payment of which Johnson and Clemens between themselves were equally liable, and Johnson perhaps the more delinquent. of the two; and the

present suit was brought and prosecuted by Mayer to enforce payment of these obligations. Nothing done or said by Clemens could have in any way worked prejudice to Johnson; and we do not think Clemens is estopped by conduct, time or laches. It is suggested by counsel that Clemens waited to assert his interest until the property greatly increased in value. But is not Johnson's attempt to repudiate the trust as well accounted for on that theory, as that Clemens was induced thereby to claim his rights? They bought the property for profit. Johnson got the rents, a very large amount of them, more in the last few years than before, and has not accounted for them in a very satisfactory way.

The most serious question is the last one, the meaning and effect of the contract of April 27, 1921. As already stated, the court below held the paper to constitute a valid and binding contract of compromise, and undertook to enforce it by the decree appealed from. Clemens' contention is that the paper signed by him was simply valid as a proposition of compromise to be submitted to his counsel, and which by fraudulent and material alterations, after it was signed, Johnson undertook to convert into an agreement, and to conceal the facts, not only from his counsel, but to impose on Clemens and his counsel material alterations; and in defense to Johnson's claim, and to reverse the decree, counsel for Clemens assert two propositions: First, that by his fraudulent representation to Clemens and his alterations of the paper, Johnson destroyed its legal effect as a contract; and, Second, that the proof establishes the fact that the paper was in fact, and intended to be, nothing more than a proposition of compromise by Johnson, not accepted, but rejected by Clemens and his counsel. The evidence shows that the so-called agreement was written by Johnson in a little pocket memorandum book. This book, it seems, had been concealed by Johnson, and not brought to light until called for on his examination as a witness on the trial. As it there appeared it was as follows:

"Agreement

April 27th 1921

I am to pay F. D. Clemens Ten Thousand Dollars for his claim on lot in Charleston, $5000 by

June 1st 1921, and interest on same, also to pay the notes of Frank Mayer endorsed by J. M. Johnson for 3000.

Signed

F. D. Clemens.''

J. M. Johnson

The memorandum book in which the writing appears, introduced in evidence, shows that the word ''Agreement'' and the last word and figures, ''for 3000'', while possibly in the same handwriting, were written with a different pencil, a harder one apparently than the one used by Johnson in writing the other parts of the memorandum, and in a more cramped hand. This paper was made at Whitesville, in Boone County, where Clemens then lived. When Johnson returned to Charleston with this paper, he undertook to dictate it to a stenographer in his attorney's office, for the purpose of having copies made. One of these copies was mailed to W. E. R. Byrne by Mr. R. E. McCabe, Johnson's counsel, enclosed with a letter from him to Byrne, dated May 13, 1921. This copy had written above the signatures these additional words and figures not in the book: ''Clemens gives Johnson $1871.15 now in the Kanawha Valley Bank.'' While Johnson says that the stenographer read the paper in the book, or that he showed it to her, she manifestly could not have copied the paper out of the book, but made it from dictation, for these added words and figures were not then, nor now, contained in the book. Besides, Clemens swears, and we find no denial by Johnson, that the words, ''Agreement'', and ''for 3000'', were not in the memorandum when signed by him. Why the alterations? They were very material. With the added words and figures out, the memorandum would answer better the theory of Clemens than that of Johnson, that it was meant for a proposition and not a final contract. The motive for the changes, plainly attributable to Johnson, was to convert his proposition into an agreement, and as suggested by counsel, to escape payment of the interest on the $3,000.00 to be paid to Mayer. Clemens says he was induced to place his name on the memorandum as prepared as evidence to his counsel that he had seen the paper, and for his further con-

sideration.   He further says that he had put the whole case
in the hands of his counsel, who resided in Charleston, and
who was acquainted with all the facts connected with the case,
and knew the value of the property as he did not, and that he
was induced to sign and consider the proposition in this way
on the false and fraudulent representation of Johnson made
at the time that his counsel Byrne was away from home in
Monroe County and neglecting the case, and for this reason
they should try and come to some settlement, but that he re-
fused to settle without the approval of Byrne.   On this sub-
ject Clemens is very strongly supported by his witness
Stewart, present and within hearing of the colloquy between
the parties leading up to the signing of the paper.   Evidently
Clemens was relying on Byrne.   Byrne was not only interested
for his client, but in any settlement which involved the amount
and security of his fees or compensation for services.   He
so states in his testimony.   Just before the visit of Johnson
to see Clemens at Whitesville, Byrne had been actively en-
gaged with Johnson personally, and with his counsel, in an
effort to settle the case on much more favorable and just terms,
from his standpoint, than those proposed in the paper, Byrne's
ultimatum having been that Johnson should pay Clemens
$22,500.00, and the two to divide and pay the Mayer note of
$2,000.00, then amounting with interest to $3,700.00, the en-
tire amount to be thus paid by Johnson being $24,375.00.
Johnson represented to Clemens when he procured the paper
of April 27, 1921, that the property was not worth over
$50,000.00.   Byrne thought the property worth $80,000.00,
or more.

If the paper actually signed was in fact intended as a bind-
ing contract of compromise, and was altered in a material
part, of course the party responsible for the alteration cannot
enforce it in any forum.   *Yeager* v. *Musgrave,* 28 W. Va. 90;
*Cox* v. *Coal & Oil Co.,* 61 W. Va. 291, 308; *Philip Cary Mfg.
Co.* v. *Watson,* 58 W. Va. 189, syl. 2; *Newell* v. *Mayberry,* 3
Leigh, 250.   As pleaded in his cross answer Johnson exhibits
a purported copy of the paper, in which the words, ''Clemens
gives Johnson the $1871.15 now in the Kanawha Valley

Bank,'' appears below the signatures, instead of above them as in the copy mailed by McCabe, Johnson's attorney, to Byrne; but he alleges that it was a part of the agreement that Clemens was to give him the $1,871.15. But this paper as so exhibited did not so provide above the signatures, and the one actually signed in the book contains no such provision, above or below the signatures. There was no direct finding of the court below on the question of alterations. However, we think the fact is clearly established, that not only in this particular, but in the other particulars indicated, the paper was fraudulently altered in material matters, and that its enforcement should be denied.

Our conclusion is to reverse the decree, and to remand the cause for further proceedings to be had in accordance. herewith.

*Reversed and remanded.*