BELMONT IRON WORKS *et al. v.* A. J. BOYLE *et al.*

(No. 8733)

Submitted May 18, 1938.   Decided June 28, 1938.

*J. O. Henson, Price, Smith & Spilman* and *J. D. Altizer,* for appellants.

*James M. Mason, Jr.,* and *Harry H. Byrer,* for appellee A. J. Boyle.

*Martin, Seibert & Beall,* for appellee Eugene Frederick, receiver for Eastern Engineers, Inc.

MAXWELL, PRESIDENT:

This is an appeal from a decree of the circuit court of Jefferson County dismissing plaintiffs' bill. The chancellor's ruling was made at the conclusion of the introduction of plaintiffs' testimony when defendents moved for a final decree in their favor. That procedure was warranted by a provision in Rule 10 of Rules of Practice and Procedure for Trial Courts, 116 W. Va. lxiv. The pertinent portion of the rule reads: "Upon the conclusion of the evidence of a litigant, his opponent may move for final decree, without prejudice, in the event such motion is overruled, to his right to take further evidence."

From a tangled skein of affairs there appears this background. In 1933, the Shenandoah Valley Jockey Club undertook the erecting and operating of a horse-racing track, with necessary equipment, on the outskirts of the City of Charles Town. In furtherance of this undertaking, the club (a corporation) acquired from Charles Town Horse Show Association a tract of 39.47 acres of land, subject to the lien of a deed of trust to secure a debt of $7,000.00. The club also obtained from Corinne R. Mason an option on an adjoining tract of 40 acres at the price of $7,000.00. In September of the same year, the club made a contract with Eastern Engineers, a corporation, for the purpose of laying out a race track and of constructing a grandstand, stables and other buildings. The principal contractor entered into numerous sub-contracts in connection with the work. In general, the construction work was completed in December, 1933. Race meetings which were held in that month and in the spring of 1934 were not financially successful.

Within the period allowed by statute mechanic's liens aggregating about $80,000.00 were asserted against the property of the jockey club. As a result of many conferences among parties in interest, a contract was

evolved and executed October 15, 1934. This is the contract in full:

"THIS AGREEMENT, made and entered into this 15th day of October, 1934, between the Charles Town Horse Show Association, a corporation, Corinne R. Mason and Albert J. Boyle, and the undersigned mechanic's lien creditors of the Shenandoah Valley Jockey Club, a corporation, and/or the Eastern Engineers, a corporation.

"WITNESSETH, that it is agreed as follows:

"1. That Charles Town Horse Show Association, Corinne R. Mason, and Albert J. Boyle shall incorporate and organize the Charles Town Jockey Club, a corporation, under the laws of the State of West Virginia, with its principal office at Charles Town, West Virginia, for the express purpose of purchasing and taking title to the real estate, situate in Charles Town, in Jefferson County, West Virginia, containing 79.47 acres (on which the Shenandoah Valley Jockey Club, has constructed its race track and buildings appurtenant thereto) when the same is sold at public sale under decree of the Circuit Court of Jefferson County, West Virginia, in the chancery cause therein pending in which Lloyd E. Mitchell, a corporation, is plaintiff, and the Shenandoah Valley Jockey Club, et al, are defendants, and for the purpose of operating said race track in the interest of the undersigned creditors, under the plan and conditions hereinafter set forth.

"2. The undersigned mechanic's lien creditors, in order to accomplish the purpose set forth in Paragraph 1 above, agree that they will assign their said liens to the said Charles Town Jockey Club as the same shall be audited by decree of court in said chancery cause, so that the said Charles Town Jockey Club may offset the same against the purchase price of said property.

"3. In consideration of the performance of the agreement set forth in paragraph 2 above, it is agreed between the parties hereto, who sign this agreement, that the

342

mechanic's lien creditors who sign this contract (not including the Eastern Engineers, Inc.) will receive the bonds of the Charles Town Jockey Club, a corporation, for the full amount of their claims, secured by a deed of trust on all the assets of the Charles Town Jockey Club, purchased at the said Court sale, containing the usual covenants for the payment of taxes, insurance and interest, and principal of said bonds, promptly when due, and in default thereof, providing for a foreclosure of said real estate, in conformity to the provisions of the statute in such case made and provided, by the trustees named therein, all to be executed according to law, and subject to the approval of the attorneys representing the creditors signing this agreement. The bonds provided for herein shall be as follows: Class "A" for the purchase money for the real estate of the Charles Town Horse Show Association and Corinne R. Mason, approximately $15,000.00; Class "B" in an amount to be determined by the directors of said corporation, for the organization expenses, operating capital, including cash for mutuel plant; Class "C", to the undersigned lien creditors except Eastern Engineers, Inc., for the full amount of their respective claims, as audited in said suit above mentioned, pending in the Circuit Court of said county. The maturities of said bonds and the interest due thereon shall be as follows: Class "A" in three years from date thereof, interest payable semi-annually: Class "B" and "C" in three years from the date thereof, interest payable semi-annually.

"The deed of trust shall provide that said bondholders shall be entitled to all of the net earnings of the corporation until they have been paid in full. The deed of trust and the bonds herein provided for shall be executed and delivered, contemporaneously with the delivery of the deed conveying the title to said real estate to the Charles Town Jockey Club, to the attorneys representing said lien creditors signing this agreement. Net earnings, it is agreed, means earnings after provision has first been

made by the Board of Directors, for maintenance, operating expenses and capital.

"4. The Board of Directors of the Charles Town Jockey Club shall be composed of five members as follows: one to represent Charles Town Horse Show Association, one to represent Corinne R. Mason, two to represent the undersigned creditors, who shall be selected by the two largest creditors (not including Eastern Engineers, Inc.) signing this agreement, and Albert J. Boyle.

"5. The president and manager of said corporation for a term of five years shall be Albert J. Boyle, who shall receive a salary of $2,400.00 each year out of corporate receipts.

"6. The Board of Directors, as above constituted shall act for a period of five years, or until said bonds are paid in full, and the provision of paragraph 4 and 5 shall be incorporated a By-law of said corporation.

"7. Of the Class "A" (first priority) bonds, $7,000.00 shall go to Corinne R. Mason for the purchase price of her said land, and the $7,000.00 shall be held unissued to cover the prior deed of trust held by The National Citizens Bank of Charles Town on the Charles Town Horse Show Association part of said land, and shall be issued only for the purpose of paying off the same.

"8. The Class "B" (second priority) bonds shall not exceed a total of $20,000.00 in amount.

"9. The deed of trust securing said Class "A" "B" and "C" bonds shall be the first lien upon said race track property of 79.47 acres and the improvements thereon, except for the said prior deed of trust on the Charles Town Horse Show Association part thereof, if said property is sold subject thereto.

"10. None of the parties hereto assume any responsibility or liability in respect to the salary of the said Albert J. Boyle as president and manager of the Charles Town Jockey Club, said salary to be obligation of said Charles Town Jockey Club only.

"11. If the Court shall decide that the Shenandoah Valley Jockey Club has no title or interest in the land of said Corinne R. Mason so as to exclude said land from sale by the Court, then said Charles Town Jockey Club will purchase only the Horse Show land of 39.47 acres (and the buildings on the said Mason land if sold) and the said Corinne R. Mason will make the deed hereinafter provided for and this contract shall be carried out in all respects as if the whole of said property had been purchased by said Charles Town Jockey Club at said court sale.

"12. If the Court shall decree that the said Shenandoah Valley Jockey Club has no interest in the land of said Corinne R. Mason as aforesaid, the said Corinne R. Mason will immediately execute and deliver a deed for said land to George M. Beltzhoover, Jr., J. M. Mason. Jr., F. L. Bushong and Forrest A. Brown, trustees, in trust to convey said land to said Charles Town Jockey Club upon the purchase by it of said Horse Show land and the delivery of her said bonds to the said Corinne R. Mason, but if for any reason the said Charles Town Jockey Club does not acquire title to said Horse Show land, or is not in a position to receive said conveyance and carry out the plan of this contract, then the said trustees will convey said Mason land to the mechanic's lien creditors who sign this contract (not including Eastern Engineers, Inc.) or to such number of them as desire the same, reserving a lien upon said land for the said sum of $7,000.00 to the said Corinne R. Mason."

In pursuance of this agreement there was procured from the Secretary of State of West Virginia, under date of November 5, 1934, a charter for a new corporation, Charles Town Jockey Club. It immediately organized for functioning, took charge of the racing plant and has operated it successfully. As required by the contract, the claims of persons asserting mechanics' liens were assigned to the corporation. From net earnings, the purchase money liens on the two parcels of land have been discharged, and large amounts have been paid *pro*

*rata* to mechanic's lien creditors, they now being the holders of Class "C" bonds.

Albert J. Boyle has been prominent in the affairs of both the Shenandoah Valley Jockey Club and its successor, Charles Town Jockey Club. Boyle bases his claim to a large block of common stock of the Charles Town Jockey Club on a purported resolution at the initial stockholders' meeting of the corporation held November 7, 1934. The resolution recites, in substance, that to compensate him for his plan and work in organizing the Jockey Club, there be paid or assigned to him 780 shares of preferred stock, 9,997 shares of common stock and $900.00 in money, the latter in discharge of his subscription to the organization stock. This resolution appears in the duly authenticated minutes of the meeting mentioned, but there has arisen serious controversy whether the resolution was, in fact, either proposed or adopted, or whether it is spurious.

In June, 1935, Boyle caused a notice to be served upon the other stockholders of the Charles Town Jockey Club of a meeting of stockholders to be held July 5, 1935. In the notice he represented himself as being the owner of 5990 shares of common stock of the corporation. The notice gave advance information of the proposing of several resolutions which, if adopted, would have caused radical changes in the corporate set-up and management of the Jockey Club's affairs. This suit was promptly instituted and the holding of the proposed meeting was enjoined. The plaintiffs allege that until the receipt of the notice, they were not advised that Boyle was claiming more than one share of common stock and eighteen shares of preferred stock, which were the amounts, respectively, for which he had originally subscribed. In addition to the prayer for an injunction restraining the holding of the proposed stockholders' meeting July 5, 1935, the plaintiffs prayed "that the incorporators may be held to hold their stock as trustees for the lien creditors pursuant to the agreement of October 15, 1934 * * * ."

Plaintiffs were the owners and holders of the two largest mechanics' liens, and, consequently, are the holders of the largest amounts of Class "C" bonds. Certain of the mechanic's lien creditors, defendants to the bill, have answered by stating that they take the same position in the controversy which the plaintiffs take, and join in the prayer of the bill. Other lienholders, defendants, say in their answers that they do not claim any interest in the stock of the corporation, and that they will have received all to which they are entitled when the unpaid portions of their bonds shall have been discharged.

On behalf of the plaintiffs it is asserted: "The contract of October 15, 1934, the related papers, and the action taken pursuant thereto amounted to a creditors' reorganization of the Shenandoah Valley Club, vesting the ownership of the new corporation, the Charles Town Jockey Club, in the mechanic's lien creditors (later Class "C" bondholders), subject only to the liens provided for in the reorganization agreement of October 15, 1934. * * * When the property in question was purchased in the name of the Charles Town Jockey Club at the sale in the creditors' suit, the purchase price being wholly furnished by the mechanic's lien creditors, and when stock in said Jockey Club was issued to the incorporators thereof, both property and stock were held subject to a resulting trust in favor of the mechanic's lien creditors. * * * The mechanic's lien creditors were the sole reorganizers of the old corporation and also the sole promoters of the new corporation and are, therefore, entitled to all of its capital stock."

In defense to the position of the plaintiffs, the contesting defendants say: "The contract of October 15, 1934, the related papers, and the action taken do not amount to a creditor's reorganization, so far as the ownership of the stock is concerned. The contract fixed and determined the limitations of the rights of the appellants. * * * There was no resulting trust. Any trust involved was an express trust. * * * The mechanics lien creditors were neither reorganizers of the old corporation nor pro-

moters of the new corporation. Their only interest or concern was to save their debts which were worthless, admittedly, unless saved by the plan worked out under the contract of October 15th, 1934."

Respecting the contract of October 15, 1934, and the rights of parties thereunder, the learned trial chancellor said: "Unless there was such a reorganization, and unless that reorganization was successful, then, the mechanic lienors were practically without hope of any reward, whatever, for the amount of their claims; because ahead of them, even in the reorganization, were the Corinne R. Mason claim and the prior lienors. * * * All of these plans and oral suggestions merged into this contract, and this Court cannot, now, go back of that contract. So far as this case is concerned, this is the beginning of the subject of litigation in this suit. * * * They (meaning the mechanic's lien creditors) agreed to accept the bonds of the Charles Town Jockey Club for the full amount of their claims, specifying that these bonds were to be secured by deed of trust. * * * Now, what was the consideration for that assignment (meaning the assignment by the mechanic's lien creditors of their claims to the Charles Town Jockey Club as provided in the contract)? Were they entitled to anything more than what the assignment states, namely, the bonds secured by the deed of trust? There is not an expression or a suggestion that they were to get stock in addition to these bonds. If these bonds are paid off, they are getting one hundred cents on the dollar. They are getting value received for the money which they put into the material. What consideration would be going from them to the Charles Town Jockey Club for the stock? They have gotten, or are promised every dollar with interest, coming to them covering their liens." These pointed excerpts from the chancellor's opinion are pertinent, and, in our opinion, unanswerable. We approve and adopt them.

We are impressed that the circumstances do not present sufficient basis for a resulting trust. Such a trust

is one which arises "where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. In such case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner. This person is the one from whom the consideration actually comes, or who represents or is identified in right with the consideration; the resulting trust follows or goes with the real consideration." 3 Pomeroy's Eq. Jur. (4th Ed.), sec. 1031. It is the purpose of a resulting trust to effectuate the presumptive intention of the parties. 65 Corpus Juris, p. 367. Our own cases are illustrative of the proper application of these principles. Typical: *Mayer* v. *Johnson*, 101 W. Va. 522, 133 S. E. 154.

In our opinion, the chancellor was plainly right in his view that the written contract of October 15, 1934, was the repository of the arrangement between the parties thereto. No word nor phrase of that instrument says or indicates that the Class "C" bondholders were to be the stockholders of the corporation. Not only so, but certain phraseology of the contract seems expressly to negative the idea that the holders of the mechanics' liens (later Class "C" bondholders) should become the stockholders of the corporation after the discharge of bonds of Classes "A" and "B". For example, there is provision in the contract that mechanic's lien creditors "will assign their said liens to the said Charles Town Jockey Club", and "will receive the bonds of the Charles Town Jockey Club, a corporation, for the full amount of their claims * * * ." Further: "The deed of trust shall provide that said bonds shall be entitled to all of the net earnings of the corporation until they have been paid in full." The expression, "bonds shall be entitled", necessarily means not that the inanimate pieces of paper shall be entitled to net earnings, but that the bondholders shall be entitled to

the earnings. Now, with that necessary and unavoidable interpolation, the meaning of the provision is that the bondholders shall be entitled to all the net earnings of the corporation until they have been paid in full. The plain import of these words is to limit the bondholders' rights in net earnings to the period through which the bonds are not paid. This is entirely inconsistent with the proposition, now asserted, that the Class "C" bondholders become *ipso facto* stockholders, and should be entitled to all net earnings without limit or qualification, subsequent to the discharge of bonds in Classes "A" and "B".

In the light of the above presented basis of decision, the question of admissibility of certain evidence bearing on Boyle's claim to a large portion of the stock becomes unimportant herein.

For reasons above set forth, we affirm the trial chancellor's decree.

*Affirmed.*